*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1389**

State of Minnesota,
Respondent,

vs.

Tabashish Anamiki Ogitchida,
Appellant

**Filed August 3, 2015
Affirmed
Worke, Judge**

Becker County District Court
File No. 03-CR-13-427

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Gretchen D. Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his test-refusal conviction, arguing that (1) evidence must be suppressed because he was unlawfully seized, (2) the evidence was insufficient to sustain

his conviction, (3) he did not validly stipulate to a felony-enhancement element, and (4) the test-refusal statute is unconstitutional. We affirm.

## FACTS

On March 1, 2013, Becker County Sheriff's Deputies Matt Gerving and Tyrone Warren were on patrol when they noticed appellant Tabashish Anamiki Ogitchida walking away from a car that was stopped against a snowbank on the side of the road. It appeared from the tire tracks that the car had been traveling in the eastbound lane, then crossed over the westbound lane and had come to a stop against a snowbank on the north side, facing the closest oncoming traffic. The deputies observed Ogitchida walking east, about 25 yards from the car, down the center of the road.

Deputy Gerving made contact with Ogitchida and asked if he had been driving. Ogitchida replied that he had not driven the car, and said that he had been dropped off by a woman who had been driving. He said that they had been run off the road by a white pickup, and that the woman had left with the individuals in the pickup. Deputy Gerving asked Ogitchida for identification, which he did not have, so Deputy Gerving took down Ogitchida's name and date of birth. Deputy Warren then recognized Ogitchida and recalled that his given name was Benjamin Bellanger. After Ogitchida repeated his contention that a female was driving the car and added that he had been passed out in the passenger seat, Deputy Warren asked to see the bottoms of Ogitchida's shoes, a request to which Ogitchida consented. Deputy Warren examined the ground around the vehicle and noted only one set of footprints, which matched Ogitchida's shoes. While Deputy Warren was checking the footprints, Ogitchida handed a set of keys to Deputy Gerving,

2

stating that they were the keys to the car and that he was handing them over because the car did not belong to him. Deputy Gerving checked Ogitchida's driving status, which indicated that his license had been cancelled as inimical to public safety. Ogitchida was placed under arrest for driving with a cancelled license.

While Deputy Gerving was placing Ogitchida in handcuffs, he noticed the odor of an alcohol beverage. Deputy Gerving turned Ogitchida to face him and tried to look him in the eyes, but Ogitchida continually looked away. Deputy Gerving advised Ogitchida that he was going to perform field sobriety tests, but Ogitchida said "I'm not going to do any tests. Just take me to jail." Deputy Gerving attempted to perform a horizontal gaze nystagmus test, and in doing so noted bloodshot and watery eyes. After unsuccessfully attempting field sobriety tests, the deputies transported Ogitchida to jail.

Ogitchida was read the implied consent advisory. Deputy Gerving then asked Ogitchida to take a breath test. Ogitchida initially said that he was too drunk, but then said he would take the test. However, Ogitchida was uncooperative; he would rise from his chair without permission, lay his head down to sleep, shout profanities, make sexual references, and pull his shirt over his head. When Deputy Warren indicated that the chemical test machine was ready, Ogitchida laid down on the floor. The deputies asked Ogitchida to take the test, but Ogitchida did not reply or respond. The deputies each took one of Ogitchida's arms and attempted to lift him, but as they did so Ogitchida became combative and tried to elbow Deputy Warren. The deputies used wristlocks to maintain control of Ogitchida, and then placed him in a holding cell. Deputy Gerving recorded

3

that Ogitchida had refused to take the test due to his combative and uncooperative behavior.

Ogitchida was charged with felony refusal to submit to a chemical test. The complaint noted that Ogitchida's driving record indicated three driving-while-impaired (DWI) convictions in the previous ten years. Ogitchida moved to dismiss the charge and to suppress evidence, but the district court denied the motions.

Prior to commencement of trial, the district court asked if any records needed to be made, and the following exchange occurred:

| | |
|---|---|
| PROSECUTOR: | Your Honor, just one, and [defense counsel] and I had previously discussed this. They are going to be stipulating to the prior DWIs that would be requisite to match with the felony charge, that we would not be presenting evidence regarding those prior convictions. |
| THE COURT: | All right. … [Ogitchida sworn in] [Defense counsel], would you obtain a valid waiver of his jury trial rights on that element of the offense? |
| DEF. COUNSEL: | Mr. Ogitchida, you've been charged with a felony because of priors, correct? |
| OGITCHIDA: | Yes. |
| DEF. COUNSEL: | And one of the things that we can do during the trial is to not have evidence of the priors be presented to the jury, as we would deem that prejudicial, right? |
| OGITCHIDA: | Yes. |
| DEF. COUNSEL: | And so we just waive that. We stipulated you do have the requisite priors, so the trial becomes about this event and this event only, correct? That the trial becomes, did you do this one? And you don't get prejudiced by them hearing that you have priors? |
| OGITCHIDA: | Yes. |
| DEF. COUNSEL: | And so that's why we're going to stipulate that there's an enhanceable offense here based on priors so the jury doesn't hear them. |
| OGITCHIDA: | Yes. |
| DEF. COUNSEL: | And you would so stipulate to that? |
| OGITCHIDA: | Yes. |

4

The jury found Ogitchida guilty. He now appeals.

## D E C I S I O N

### *Evidence suppression*

Ogitchida first argues that the district court erred in concluding that he was lawfully seized, and thus any evidence gleaned as result of his seizure must be suppressed. In the context of a pretrial suppression of evidence, we review the district court's factual findings for clear error and its legal conclusions de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

Ogitchida argues that he was seized when Deputy Gerving asked him for identification and asked if he had been driving. We disagree. A seizure of a person occurs when "objectively and on the basis of the totality of the circumstances, . . . a reasonable person in the defendant's shoes would have concluded that he or she was not free to leave." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993). An encounter with police is not a "seizure" if officers merely approach an individual and ask questions, or ask for identification. *Id.* at 782.

We agree with the district court that Ogitchida was seized when he was advised that he was being placed under arrest for driving with a cancelled license. The seizure at that time was lawful because the deputies reasonably suspected Ogitchida of criminal activity. *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). The deputies' investigation indicated that (1) Ogitchida was in close proximity to a recently-driven vehicle, (2) he had been inside the vehicle, (3) no other person was present in or around the vehicle, (4) his footprints were the only footprints around the vehicle, (5) he had

5

possessed the keys to the vehicle, and (6) his license had been cancelled as inimical to public safety. This collection of "specific, articulable facts" leads to the conclusion that Ogitchida had engaged in criminal activity. *Id.* Because the seizure of Ogitchida was lawful, there is no basis upon which to suppress evidence. *See id.* at 392 (concluding that evidence obtained from an illegal search must be suppressed).

## *Evidence sufficiency*

Ogitchida next argues that the evidence was insufficient to sustain his conviction with regard to two of the elements of test refusal. Claims of insufficient evidence are reviewed to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jury to reach its verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Ogitchida first asserts that the evidence was insufficient to prove that he was under arrest for DWI. To be required to take a chemical test, the state must have probable cause to believe that a person was operating a vehicle while impaired and the person must be "lawfully placed under arrest" for violation of Minnesota's DWI statutes. Minn. Stat. § 169A.51, subd. 1(b)(1) (2012). Ogitchida's assertion is contradicted by the record, which shows that he was read aloud the implied consent advisory, which stated explicitly that "you have been placed under arrest for" "operating a motor vehicle in violation of Minnesota's D.W.I. laws." Ogitchida's handwriting also appears on the advisory in

several places. This evidence was sufficient for the jury to conclude that he was placed under arrest for driving while under the influence of alcohol before he was asked to take the breath test.

Ogitchida also contends that the evidence was insufficient to prove that he refused to take the breath test. In *State v. Ferrier*, this court engaged in a detailed discussion of what constitutes criminal test refusal. 792 N.W.2d 98 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). The rule is that "refusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *Id.* at 102. A specific verbal refusal is not required. *Id.* at 101. A driver is not permitted to "verbally agree to testing and then frustrate the testing process without criminal consequence." *Id.* Here, the totality of the circumstances shows that Ogitchida refused. Ogitchida gave some verbal indications that he would take the test, but his conduct speaks louder than his words. After the test machine was prepared, Ogitchida laid on the floor and was nonresponsive. When the deputies physically tried to move him, he became combative, such that the deputies had to subdue him. The jury needed only to credit the account of Ogitchida's conduct at the time when he was asked to take the breath test to validly conclude that he refused.

### *Stipulation*

Ogitchida argues that a necessary element of his offense has not been established. A felony-level conviction for test refusal requires that the refusal be committed "within ten years of the first of three or more qualified prior impaired driving incidents." Minn.

7

Stat. §§ 169A.20, subd. 2, .24, subd. 1(1) (2012). Ogitchida asserts that his on-the-record stipulation was insufficient to fulfill this requirement.

Ogitchida has waived this argument. A defendant may elect to waive his right to a jury trial on one element of an offense and admit the existence of that element, "thereby removing the issue from the case." *State v. Berkelman*, 355 N.W.2d 394, 397 (Minn. 1984). *Berkelman* states that a district court *errs* in denying a defendant the ability to stipulate to an element when consideration of that element has the potential to harm his case. *Id*. Here, Ogitchida's stipulation was a matter of trial strategy: he concluded that the prejudicial effect of his past convictions might color the jury's consideration of his charged offense. This strategy has merit, given the ease with which Ogitchida's convictions could have been proven.

Ogitchida also argues that he did not validly waive his right to have the jury consider the element of his past convictions, relying on *State v. Kuhlmann*. 806 N.W.2d 844 (Minn. 2011). Whether a defendant was denied the right to a jury trial is reviewed de novo. *Id*. at 848-49. A waiver of this right must be knowing, intelligent, and voluntary, and must be personally waived by the defendant. *Id.* at 848.

But *Kuhlmann* is inapposite here, because in that case the defendant gave no on-the-record expression of his waiver; rather, his counsel stipulated on his behalf. *Id.* at 847, 849. *Kuhlmann* specifically contrasts its facts with another case in which the defendant gave an on-the-record waiver of his right to a jury trial, *State v. Pietraszewski*. 283 N.W.2d 887 (Minn. 1979). Here, Ogitchida gave an on-the-record waiver in which he affirmatively agreed several times to waive his right to jury consideration of the

8

element of his past convictions. His affirmations must be viewed in light of the complaint, which specified that "review of Ogitchida's driving record indicates prior DWI convictions in 2003, 2004, and 2006." The on-the-record colloquy regarding the waiver is more extensive than that in *Pietraszewski*. *See id.* at 890. The record establishes that Ogitchida's waiver was knowing, intelligent, and voluntary.

*Constitutionality*

Ogitchida next argues that Minnesota's test-refusal statute is unconstitutional as a violation of substantive due process. However, just days after Ogitchida's brief was filed with this court, our supreme court addressed this precise argument and rejected it. *State v. Bernard*, 859 N.W.2d 762, 773-74 (Minn. 2015). Ogitchida's argument is now foreclosed by precedent.

*Pro se supplemental brief*

Ogitchida filed a pro se supplemental brief that contains several claims. We will not consider these claims because they lack support in the record and/or are unsupported by legal authority. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (concluding that arguments set out in pro se supplemental brief would not be considered because the "brief contain[ed] no argument or citation to legal authority in support of the allegations"); *State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (stating that assignment of error based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection), *aff'd*, 728 N.W.2d 243 (Minn. 2007). The brief contains a single legal authority, but it does not pertain to the argument made.

**Affirmed.**

9