STATE of Minnesota, Respondent,

v.

Deborah Lynn FERRIER, Appellant.

No. A09–2241.

Court of Appeals of Minnesota.

Dec. 21, 2010.

Lori Swanson, Attorney General, St. Paul, Minnesota; and James C. Backstrom, Dakota County Attorney, Helen R. Brosnahan, Assistant County Attorney, Hastings, MN, for respondent.

John Edward Connelly, Special Assistant Public Defender, Faegre & Benson LLP, Minneapolis, MN, for appellant.

Considered and decided by
TOUSSAINT, Presiding Judge;
JOHNSON, Chief Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.[*]

Following waiver of appellant Deborah Ferrier's right to a jury trial, the district court made findings convicting her of first-degree refusal to submit to chemical testing. Appellant disputes the sufficiency of the evidence to prove that refusal occurred, arguing that the record demonstrates mere failure to produce a testable sample. We affirm.

## FACTS

Late in the evening on April 29, 2009, Eagan Police Sergeant Daniel Tocko lawfully stopped appellant and arrested her for driving while impaired; a preliminary breath test showed that appellant had an alcohol concentration of .184.

After transporting her to the police station, Sergeant Tocko read appellant the implied-consent advisory. She asked to speak to a lawyer and was given approximately 45 minutes to do so. Tocko then asked appellant if she would take a blood or urine test, and appellant chose to take a urine test.

Appellant told Tocko that she could or would try to provide a urine sample for the test. A female police officer accompanied appellant to monitor the urine test, but appellant did not produce a urine sample. Appellant then was given between 6 and 15 glasses of water, which she drank. The female officer twice took appellant back to the restroom, for a total of three attempts. Before the final attempt, approximately three hours after he had stopped her, Sergeant Tocko advised appellant that he would treat it as a refusal if she did not urinate. Appellant never produced a urine sample.

Appellant was subsequently charged with first-degree refusal to submit to a chemical test, a violation of Minn.Stat. §§ 169A.20, subd. 2, .24 (2008).[1] She waived her right to a jury trial, and the district court found her guilty.

## ISSUE

Are the facts established in the record and found by the district court sufficient to support the district court's determination that appellant refused testing?

## ANALYSIS

Appellant argues that the evidence is insufficient to establish that she refused to submit to chemical testing because she merely failed to provide a testable sample and did not verbally refuse testing.[2] We

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Appellant also was charged with providing false information to police, a violation of Minn.Stat. § 609.506, subd. 1 (2008), for giving Tocko a false name when he stopped her. She submitted that charge to the district court on a stipulation. Her conviction of that offense is not at issue in this appeal.

2. Appellant does not dispute that she was lawfully stopped and arrested or that Sergeant Tocko had probable cause to request the test, as required under Minn.Stat. § 169A.51, subd. 1(b) (2008).

have addressed this question in prior review of civil proceedings on license revocation, but appellant now raises the issue in the context of a criminal conviction.

▮▮▮ Whether one can "refuse to submit to a chemical test" within the meaning of Minn.Stat. § 169A.20, subd. 2, without verbally refusing testing is a question of statutory interpretation, which we review de novo. *See State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002). The primary objective of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). "Where the legislature's intent is clearly discernable from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning." *State v. Williams*, 762 N.W.2d 583, 585 (Minn.App. 2009) (quotation omitted), *review denied* (Minn. May 27, 2009).

▮▮▮ Contending that the term "refuse" requires a volitional act, appellant argues that mere failure to produce urine for testing is not refusal. To refuse generally means to "indicate unwillingness to do, accept, give, or allow" something. *American Heritage Dictionary* 1469 (4th ed.2006). The plain meaning of the statute calls for a volitional act, and appellant correctly asserts that the statute does not criminalize inability to perform the steps necessary for testing. Actual unwillingness to submit to testing must be proved. Despite this evident meaning of the statute, the language does not suggest, nor does appellant show, that circumstantial evidence could not establish refusal without a direct statement of unwillingness.

The test-refusal statute, making it a crime to "refuse to submit," does not state that verbal refusal of testing is required. Minn.Stat. § 169A.20, subd. 2. It is discernible from the statutory language that one may "indicate unwillingness" in non-verbal ways. Moreover, ignoring this reading would undermine the test-refusal statute by permitting a driver to verbally agree to testing and then frustrate the testing process without criminal consequence. *See* Minn.Stat. § 645.17 (2010) (stating that legislature does not intend statutes to have absurd or unreasonable results).

▮▮▮ Appellant nonetheless argues that a verbal refusal should be required for a conviction of test refusal in order to avoid imposing criminal consequences on those who are willing but unable to submit to testing. No doubt in some cases it may be difficult to distinguish between a driver who intends to submit to testing but is physically unable to perform the steps necessary for testing and one who intends to frustrate the testing process. This is not one of those cases. And despite the difficulty, juries commonly undertake the task of determining intent. *See State v. Provost*, 490 N.W.2d 93, 101 (Minn.1992) (stating that state of mind is the type of difficult judgment jurors regularly make in their everyday lives). Because direct evidence of intent is rarely available, intent generally must be proved "by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn.1997).

▮▮▮ Accordingly, our previous decisions involving the criminal test-refusal statute have consistently recognized the legitimacy of circumstantial evidence in establishing a defendant's intent. *See State v. Collins*, 655 N.W.2d 652, 658 (Minn.App.2003) (driver's disruptive behavior during the implied-consent procedure "amounted to a retraction of her request to contact an attorney"), *review denied* (Minn. Mar. 26, 2003); *State v. Hagen*, 529 N.W.2d 712, 714 (Minn.App.1995) (stating, without hold-

ing, that refusal to reply may constitute refusal to submit if there is "no indication the driver is incapable of refusal"). In sum, refusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances.

Appellant also argues that the district court did not and could not find sufficient circumstantial evidence that she was actually unwilling to participate in the testing process. "The standard of review for a claim of insufficient evidence is the same for non-jury and jury trials." *State v. Hofer*, 614 N.W.2d 734, 737 (Minn.App. 2000), *review denied* (Minn. Aug. 15, 2000). When reviewing the sufficiency of circumstantial evidence to support a conviction, we first identify the circumstances proved, deferring to the factfinder and viewing the evidence in the light most favorable to the conviction. *State v. Andersen*, 784 N.W.2d 320, 329–30 (Minn.2010). We assume that the factfinder believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). Our second step is to independently examine the reasonableness of all inferences that might be drawn from the circumstances proved. *Andersen*, 784 N.W.2d at 329. "[T]he circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 330.

The district court made numerous findings regarding the circumstances after appellant's arrest, which appellant concedes are supported by the record. The district court found that Sergeant Tocko advised appellant that refusal to submit to testing is a crime and offered her the option of blood or urine testing. Appellant elected the urine test, telling the officer that she could or would try to provide a sample.

The court found that appellant's election of the urine test presupposed her ability to provide a sample.

But appellant did not provide a sample. Believing that perhaps appellant was experiencing "stage fright," Tocko provided appellant between 6 and 15 glasses of water and permitted her three opportunities to urinate over the course of more than one hour, a significantly longer time than is normally afforded for testing. Tocko and the female officer administering the test also sought to lighten the mood so that appellant would not be impeded by nervousness. The district court found that Tocko gave appellant "every opportunity to provide the urine sample" and specifically advised her before the third and final attempt that failure to produce a urine sample would be considered refusal. Appellant never indicated that she was physically incapable of urinating or requested an alternative test. Appellant failed to produce a sample.

Based on these circumstances, the district court did not err in its ultimate finding that appellant's failure to produce a urine sample constituted a refusal to submit to testing. Although failure to produce a urine sample may, in some cases, reasonably indicate inability to urinate, this is not such a case. This record as a whole is inconsistent with appellant's failure to urinate being attributable to inability and is consistent with her unwillingness to submit to the testing process.

## DECISION

A driver may refuse to submit to chemical testing by words or conduct. Depending on the total circumstances, failure to perform the necessary steps for testing may be circumstantial evidence of refusal by conduct. Because the record establishes that appellant's conduct, viewed as a whole, amounted to refusal, the court

properly found appellant guilty of refusal to submit to chemical testing.

**Affirmed.**