*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0610**

Kevin Jerome Simons, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed April 6, 2015
Affirmed
Hudson, Judge**

Hennepin County District Court
File No. 27-CV-12-6341

Craig E. Cascarano, Joel R. Fink, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license under the implied-consent law, arguing that the district court clearly erred by finding that he legally refused chemical testing. We affirm.

## FACTS

The district court issued an order sustaining the administrative revocation of appellant Kevin Jerome Simons's driving privileges, finding that Simons had refused chemical testing after being read the implied-consent advisory. At an evidentiary hearing on the test-refusal issue, an Edina police officer testified that, on responding to a disturbance in the Hennepin County Library parking lot, he found Simons seated in the driver's seat of a parked vehicle. The officer believed that Simons, who was argumentative, had been drinking. Simons declined field sobriety tests, and the officer arrested him on suspicion of driving-while-impaired (DWI). Simons was transported to the police booking facility, where the officer read him the implied-consent advisory. Simons told the officer that he understood the advisory and first indicated that he wished to speak with an attorney, but then changed his mind. When the officer asked whether Simons would take a urine test, Simons asked about his options. The officer told him that if he did not wish to take a urine test, he could take a blood test. The officer testified that after about 15 minutes, with long periods of silence and staring, Simons eventually agreed to take a urine test.

Because the booking area was full, the officer asked Simons to wait in a cell while the officer retrieved the container to collect a urine sample. But the officer testified that when he returned, he discovered that Simons had urinated into the toilet in the cell and "proceeded to smirk or smile" at the officer. Simons declined a blood test, and the officer allowed him more time to provide a urine sample, but he was only able to provide a few drops, so that the sampling powder in the cup remained dry. About one hour after the

2

reading of the advisory, Simons again declined a blood test, stating that he believed he had already taken a urine test. The officer then ended the testing process.

The district court considered evidence of an audio recording of the administration of the advisory, which stopped when Simons agreed to a urine test, but started again when it became clear that he had not provided an adequate sample. The recording shows that about an hour after the advisory was given, Simons told the officer, "If you want me to do more, I can try to do more," but the officer declined to allow him to do so. Simons testified that when the tape was not running, he asked multiple times to take the test, but the officer did not respond. He testified that he used the toilet in the cell "from a practical standpoint." He acknowledged that he declined to take a blood test on the ground that he had already given a urine sample, but testified that he ultimately told the officer he would take a urine test.

The district court found that Simons refused chemical testing, based on his behavior during the booking process, which included his decision to use the toilet while the officer retrieved the cup, his smirking when the officer discovered this, the length of time thereafter when he did not provide a usable sample, and his refusal to agree to an alternative test. The district court found that Simons's last-minute statement, considered in light of his prior behavior, did not change its view. This appeal follows.

## DECISION

If a law-enforcement officer has "probable cause to believe [a] person was driving, operating, or in physical control of a motor vehicle" while impaired, the officer may request that the driver submit to a chemical test of the person's blood, breath, or urine.

Minn. Stat. § 169A.51, subd. 1(a), (b) (2014). If a driver refuses to permit a test, "a test must not be given," Minn. Stat. § 169A.52, subd. 1 (2014), but the commissioner of public safety shall revoke the person's driver's license for one year or more, *id.*, subd. 3(a) (2014). The issue of whether a driver has refused to submit to chemical testing presents a question of fact, which this court reviews for clear error. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 722 (Minn. App. 2014).

"[R]efusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). Thus, circumstantial evidence can establish unwillingness to take a test even without a direct statement of unwillingness. *Id.* at 101. If a driver commits actions that frustrate the test, the driver is considered to have refused testing. *Busch v. Comm'r of Pub. Safety*, 614 N.W.2d 256, 259–60 (Minn. App. 2000); *see also Sigfrinius v. Comm'r of Pub. Safety*, 378 N.W.2d 124, 127 (Minn. App. 1985) (concluding that a driver's act of putting a breath mint in his mouth constituted a refusal to test when he was advised several times to remove it, and the district court found that his actions were calculated to avoid license suspension). And "[i]f a driver expresses verbal agreement to submit to chemical testing but does not provide an adequate sample, his or her conduct may be deemed a refusal to submit to chemical testing." *Stevens*, 850 N.W.2d at 721. In *Stevens*, this court upheld the district court's findings that a driver refused testing when she agreed to take a urine test, but failed to provide a urine sample after being given three opportunities to do so. *Id*. at 722.

4

Simons points out that a driver's confusion is a reasonable basis for test refusal, *State, Dep't of Highways v. Beckey*, 291 Minn. 483, 485, 192 N.W.2d 441, 444–45 (1971), and he argues that he was somewhat confused, but nonetheless attempted to provide an adequate sample within a reasonable time. He points to his statement on the recording that he "c[ould] try to do more." The recording, however, shows that Simons made this statement one hour after the reading of the advisory. During that hour, he initially failed to provide a urine sample, the officer allowed him additional time to do so, he failed again to provide a sample, and he twice declined a blood test, ultimately giving the reason that he had already agreed to take a urine test.

The "election of one of the alternative chemical tests . . . presupposes the driver's ability to supply, within a reasonable time, a sample essential to that test," and an officer need not "await the driver's convenience of a different time or place." *State, Dep't of Highways v. Lauseng*, 289 Minn. 344, 345, 183 N.W.2d 926, 927 (1971); *see also Stevens*, 850 N.W.2d at 722 (citing *Lauseng* and stating that "neither the implied-consent statute nor the caselaw requires the commissioner to prove that a driver had any particular amount of time in which to provide a sample"). Here, Simons urinated in the toilet, failed to provide a urine sample within one hour after receiving the implied-consent advisory and 45 minutes after stating that he would take a urine test, and twice declined an alternative test. On these facts, the officer did not act unreasonably by declining to allow Simons additional time in which to provide a sample, and the district court did not clearly err by finding that, under the totality of the circumstances, Simons's actions constituted a refusal to submit to testing. *See Stevens*, 850 N.W.2d at 722 (concluding

5

that district court's findings allowed an inference that the driver had a reasonable amount of time to provide a urine sample, so that the absence of a sample was intentional).

**Affirmed.**