*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1407**

State of Minnesota,
Respondent,

vs.

Matthew Aaron Aldrich,
Appellant.

**Filed June 29, 2015
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-13-34244

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael Kolich, St. Louis Park City Attorney, Jamie Lynn Kreuser, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Stauber, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant challenges his conviction for third-degree test refusal, arguing that the evidence was insufficient to show that he had an "actual unwillingness" to submit to

testing. Appellant also argues that the test-refusal statute violates his federal and state due-process rights as applied to urine tests. We affirm.

**FACTS**

St. Louis Park police officer Aaron Trant was patrolling in the area of Minnetonka Boulevard and Lake Street in St. Louis Park about 1:00 a.m. on August 13, 2013. He saw a white Honda Civic make a fast turn out of a gas station and an abrupt stop at a stoplight. Trant followed the Civic and watched it make a "wide, fast, wide right turn," coming within inches of a concrete median, and swerve back and forth in its lane, crossing the fog line several times by a margin of two to three tire widths. The car came to an "abrupt stop" at a dead end and then laboriously turned around. After watching it speed up and slow down, Trant stopped the car, which was driven by appellant Matthew Aaron Aldrich.

Trant noticed that appellant's eyes were "very bloodshot, watery," and he could smell a "strong odor of consumed alcoholic beverage on his breath." Appellant told Trant that he had had two beers. Trant described his demeanor as "very nervous and confused." Trant asked him to step out of the car and perform field sobriety tests. Appellant held onto the car as he walked to the front of it; he became "very care free and started joking."

Trant asked him to repeat the alphabet from C to X; despite several tries, appellant was unable to do so and was also unable to repeat the entire alphabet. Appellant refused to perform any other field sobriety tests and would not take a preliminary breath test (PBT). Trant arrested him for driving while impaired (DWI), transported him to the

2

police station, read him the implied-consent advisory, and asked him to take a breath test. From 1:37 a.m. to 2:03 a.m., appellant made repeated calls to his attorney of choice, who did not answer the phone. Trant and two other St. Louis Park police officers, Sergeant Lewis and Sergeant Garland, offered to provide appellant with telephone books or to dial phone numbers for him, but he refused. Trant warned appellant that he would be considered to have refused testing if he did not make a decision within a short time. At 2:04, Trant terminated the implied-consent interview. Shortly before terminating the implied-consent interview, Sergeant Garland offered appellant the option of taking a urine test instead of a breath test, but appellant also refused the urine test. Appellant was charged with test refusal and driving while impaired (DWI). A jury convicted him on both charges and the district court sentenced him on the third-degree test refusal charge. This appeal followed.

## DECISION

## I.

Appellant contends that the evidence of test refusal is insufficient to support his conviction. Under Minn. Stat. § 169A.20, subd. 2 (2012), "[i]t is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51[.]" A chemical test "may be required" if a peace officer has probable cause to believe that a person is driving while intoxicated and that person has been "lawfully placed under arrest for a violation" of the DWI law. Minn. Stat. § 169A.51, subd. 1(b) (2012). In order to convict a person of test refusal, the state must show that a peace officer had "probable cause to believe the person was driving, operating, or in physical

3

control of a motor vehicle while impaired." *State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) (quotation omitted). "Probable cause under section 169A.51, subdivision 1(b) exists when there are facts and circumstances known to the officer [that] would warrant a prudent man in believing that the individual was driving or operating or was in physical control of a motor vehicle while impaired." *Id.*

In addition, the state must prove beyond a reasonable doubt that the driver refused to consent to chemical testing. Refusal can be shown in a number of ways, including a verbal refusal, an indication of unwillingness to comply, or actions that frustrate the testing process. *State v. Ferrier*, 792 N.W.2d 98, 101 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). When a driver does not explicitly refuse to consent to chemical testing, intent to refuse may be established by circumstantial evidence. *Id.*

A reviewing court employs a two-step analysis to determine whether circumstantial evidence is sufficient to support a conviction. *State v. Sterling*, 834 N.W.2d 162, 174 (Minn. 2013). The reviewing court first identifies the circumstances proved, deferring to the jury's acceptance and rejection of evidence in the record, and its assessment of witness credibility. *Id.* at 174-75. Once the circumstances proved are identified, the reviewing court decides "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotation omitted).

The circumstances found by the jury include the following: (1) Trant had probable cause to believe that appellant was driving while impaired based on observations of driving conduct, appellant's physical appearance and demeanor, the odor of alcohol,

4

appellant's admission that he had two beers, and his failure to successfully perform field sobriety tests; (2) Trant read the implied-consent advisory twice to appellant, appellant indicated he understood, and Trant asked him to take a breath test; (3) the advisory includes the statement, "If the test is unreasonably delayed or if you refuse to make a decision, you will be considered to have refused the test"; (4) appellant was permitted to call his chosen attorney three times over a 26-minute period; (5) when appellant was unsuccessful in contacting his attorney, Trant and his colleagues offered resources and suggestions about how to contact that attorney or a different attorney; (6) appellant was offered a fourth opportunity to call his attorney but declined because "she's not picking up"; and (7) despite this, appellant continued to refuse chemical testing without his attorney present. The circumstances found by the jury and the reasonable inferences that can be drawn from them are inconsistent with any rational hypothesis except guilt. *See id.*

Relying on *Ferrier*, appellant contends that "refusal requires a 'volitional act' done with an 'actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances.'" (quoting *Ferrier*, 792 N.W.2d at 102). This court stated, "[R]efusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *Id*. Appellant acknowledged that he would be unable to reach a particular attorney but refused to be tested without that attorney present; this is sufficient to show an "actual unwillingness" to submit to testing.

5

**I.**

Appellant argues that the Minnesota test-refusal statute is an unconstitutional denial of his federal and state due-process rights. Appellant concedes that the Minnesota Supreme Court in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), held that a warrantless search of a defendant's breath was permissible as a search incident to arrest. Because a warrantless search under those circumstances does not implicate a fundamental right and the state has a rational basis for implementing a test-refusal statute, the supreme court further held that the statute does not violate a defendant's substantive due-process rights. *Id.* at 763.

Nevertheless, appellant argues that his conviction must be reversed because *Bernard* explicitly declined to address the constitutionality of the test-refusal statute as it applies to urine or blood tests. *See id.* at 768, n.6. Appellant asserts that because he was offered a urine test as an alternative to a breath test, *Bernard* does not apply to his situation. But appellant was offered a breath test; the urine test was only offered as a last minute option because appellant had already refused to take a breath test. *See* Minn. Stat. § 169A.51, subd. 3 (2012) (permitting peace officer to direct which type of test a person must take, but requiring peace officer to offer an alternative test if person is first offered blood or urine test).

The test-refusal statute states that it is "a crime for any person to refuse to submit to a chemical test of the person's blood, breath, *or* urine." Minn. Stat. § 169A.20, subd. 2. The evidence is sufficient to show that appellant refused to submit to a breath test, the first option offered to him. It is not necessary for us to reach the question not answered

in *Bernard* of whether that opinion's reasoning applies as well to blood or urine testing, when urine testing was offered only as an option after appellant refused a breath test.

In his pro se supplemental brief, appellant argues that the evidence was insufficient to support his conviction and that he was deprived of his right to a fair trial because of ineffective assistance of counsel. We have thoroughly reviewed the record and conclude that these issues are without merit. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) (stating that appellate court will not consider pro se claims on appeal that are unsupported by citations to legal authority).

**Affirmed.**