*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0661**

State of Minnesota,
Respondent,

vs.

Arnold Lee Scott,
Appellant.

**Filed April 25, 2016
Affirmed
Ross, Judge**

Anoka County District Court
File No. 02-CR-14-1293

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jeffrey A. Carson, David K. Ross, Carson, Clelland & Schreder, Brooklyn Center, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Reyes, Judge; and Randall, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**ROSS**, Judge

A jury found Arnold Scott guilty of chemical-test refusal after police arrested him on suspicion of drunk driving. Scott appeals his conviction, arguing that the state produced insufficient evidence that he refused to take a breath test, the implied-consent statute is unconstitutional, and the district court committed reversible error by failing to obtain his consent before instructing the jury to draw no adverse inference from his exercising his constitutional right not to testify. We affirm the conviction because the state produced sufficient evidence that Scott refused the breath test, Scott points to no authority supporting his claim that current decisions of the Minnesota Supreme Court on the constitutionality of the implied-consent statute are not binding, and Scott's substantial rights were not violated by the district court's failure to obtain his consent to the no-adverse-inference instruction.

## FACTS

In February 2014, Spring Lake Park police officer Mark Bonesteel clocked a car driven by Arnold Scott traveling 14 miles per hour over the speed limit. Officer Bonesteel followed the car and saw two more infractions. He initiated a stop.

It was cold, so Officer Bonesteel ushered Scott into his squad car. There he smelled an alcoholic beverage. Scott admitted to drinking beer and Officer Bonesteel noticed that his speech was slightly slurred and his eyes were bloodshot and watery. The officer asked Scott to perform field sobriety tests. Scott declined to take the walk-and-turn and the one-leg-stand tests, saying that he had a titanium plate in his knee. Officer Bonesteel administered the horizontal gaze nystagmus test, which indicated that Scott was

intoxicated. He also administered a preliminary breath test, which revealed an alcohol concentration of 0.154.

Officer Bonesteel arrested Scott for driving while impaired and brought him to the police station. He read Scott the implied-consent advisory. Scott said that he would take a breath test. Officer Bonesteel usually administers that test by handing the tube to the test subject and telling him to blow, and to keep blowing, until a tone sounds or the officer tells him to stop. According to Officer Bonesteel, when Scott blew into the machine he repeatedly blew and stopped and removed the tube from his mouth. He told Scott several times that the clock was running on the three minutes allowed for the test process, and finally the time expired. The machine registered a deficient sample. Officer Bonesteel remarked on the test report, "[S]tarted and stopped. [E]xhaled heavily after sample." He says that Scott never claimed that he was physically unable to blow sufficiently into the machine.

Officer Bonesteel asked Scott again to take the test, again directing him to blow into the tube continuously. He says that Scott acted the same way as before: blowing and soon stopping, and exhaling heavily only after he had removed the tube from his mouth. The second test also registered a deficient sample. The officer again noted what he saw: "[S]tarted and stopped repeatedly. [P]aused several times and would not blow. [M]ade no attempts to blow hard."

The state charged Scott with second-degree chemical-test refusal and second-degree driving while impaired, and the case went to trial. Scott chose not to testify, and his attorney elicited a waiver of Scott's right to testify. The prosecutor and defense attorney examined

3

the jury instructions and made a few changes, but no one discussed the no-adverse-inference instruction regarding Scott's decision not to testify. The jury was given a no-adverse-inference instruction anyway. The instruction explained that the defendant has a constitutional right not to testify and that the jury may not draw any inference from the fact that the defendant did not testify. Scott neither requested the instruction nor objected to it, but he also did not expressly consent to it.

The jury found Scott guilty of refusing to submit to a chemical test but acquitted him of driving while impaired. Scott appeals his test-refusal conviction.

**D E C I S I O N**

Scott argues that the state failed to introduce sufficient evidence to prove that he refused to submit to the breath test. He also challenges the constitutionality of Minnesota's test-refusal law under substantive due process and the unconstitutional-conditions doctrine. And he argues that the district court committed reversible error by giving the no-adverse-inference instruction without his consent. The arguments are not convincing.

**I**

We first address Scott's argument that the state failed to offer sufficient evidence that he refused to take the breath test. Our standard of review for sufficiency-of-the-evidence claims depends on whether the challenged element was proved by circumstantial or direct evidence. Where the defendant did not expressly refuse, the state must prove refusal by relying on inferences from the circumstances. *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010), *review denied* (Minn. Mar. 15, 2011). Scott did not verbally refuse the test, and the state offered only circumstantial evidence to prove his refusal. A

4

conviction based on circumstantial evidence attracts our greater scrutiny on review. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).

For sufficiency-of-the-evidence challenges involving circumstantial evidence, we first identify the circumstances proved, deferring to the jury's acceptance of the inculpatory evidence and its rejection of conflicting evidence. *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013). We construe conflicting evidence in the light most favorable to the verdict, and we assume that the jury believed the state's witnesses and disbelieved defense witnesses. *Id.* at 599. Sufficient evidence exists if the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt. *Id.*

To convict a driver of test refusal, the state must prove some action showing that the driver volitionally refused, not merely that he failed to produce an adequate sample. *Ferrier*, 792 N.W.2d at 101. "[R]efusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *Id.* at 102.

Taking the evidence in the light most favorable to the verdict, we observe that the following circumstances were proved: Scott verbally agreed to take the breath test; he was given two, three-minute opportunities to perform the breath test; he was instructed accurately how to perform the test, including blowing steadily into the tube for an extended exhale; during both three-minute periods, he repeatedly started and stopped blowing into the tube and finally removed it from his mouth without exhaling into it; he was physically capable of exhaling heavily and he had gathered a sufficient amount of air in his lungs to do so, but he exhaled in that fashion only after he removed the tube from his mouth. These

5

circumstances imply that Scott intentionally averted his breath to prevent an adequate test sample to measure his intoxication, effectively refusing the test.

Scott appears to argue for an alternative hypothesis. He suggests that he was trying to provide an adequate breath sample but he was either physically unable to perform the test or he did not understand how the test worked. Scott maintains that the officer gave him no instructions before the test and that the officer never told him his actions could constitute refusal. Although Officer Bonesteel did not testify to what exactly he told Scott before the first test, he did testify that he generally tells test subjects to blow continuously into the device until the tone sounds or he tells them to stop. And before the second test, Officer Bonesteel testified that he directed Scott "[t]o blow into the machine continuously while the tone was on and to keep going" until he told him to stop. Scott is correct that Officer Bonesteel did not testify that he told Scott that his uncooperative actions could constitute refusal. But the officer did testify that he read Scott the implied-consent advisory, which explains, "If the test is unreasonably delayed . . . you will be considered to have refused the test." The jury saw the completed advisory form, which indicates that Scott responded that he understood this. Although our *Ferrier* opinion states that the officer in that case "specifically advised [Ferrier] before the third and final attempt that failure to produce a urine sample would be considered refusal," we did not suggest (and the statute does not suggest) that the additional explanation is necessary for a conviction. *Id.*

Scott emphasizes that Officer Bonesteel never asked whether he had any test-inhibiting physical limitations. But as a matter of fact, the circumstances proved establish that Scott was physically capable of blowing heavily into the machine. And as a matter of

6

law, *Ferrier* suggests that the onus is on the test taker to communicate any claimed physical inability. *See id.* (upholding refusal and observing that the driver "never indicated that she was physically incapable of urinating or requested an alternative test"). Scott knew that he could inform the officer if he was unable to perform the test, as he had demonstrated by twice informing Officer Bonesteel that his knee problem prevented him from performing balance-related field sobriety tests. The state produced sufficient evidence for the jury to convict Scott of test refusal.

## II

We turn to Scott's constitutional challenge. He contends that the test-refusal law violates substantive due process and the unconstitutional-conditions doctrine. Scott argues that the otherwise dispositive state supreme court decision of *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), *cert. granted*, 136 S. Ct. 615 (Dec. 11, 2015) (No. 14-1470), is not binding on us because the United States Supreme Court has granted certiorari to review that case. To support his claim that we need not follow the state's final decisions until a final decision by the United States Supreme Court is made, Scott points to *State v. Losh*, 721 N.W.2d 886, 893 (Minn. 2006). *Losh* does not support Scott's position.

The *Losh* court considered a question that neither mirrors nor parallels our question. The *Losh* court answered only whether a convicted criminal defendant can benefit from a new constitutional rule of criminal procedure that the United States Supreme Court established while the defendant's conviction was still being considered on appeal. *Id*. The answer to this question in *Losh* depended on the temporal relationship between the cases; if the new caselaw rule was established while the later case was still "pending on direct

7

review," then the criminal defendant in the later case gets the benefit of the new rule. *Id.* So when the *Losh* court declares that "a case is pending until such time as the availability of direct appeal has been exhausted, the time for a petition of certiorari has elapsed or a petition for certiorari with the United States Supreme Court has been filed and finally denied," *id.* (quotation omitted), it is saying nothing about when its own decisions become binding on this court and the district court. That is, *Losh* is not inviting this court to disregard otherwise precedential holdings that have been established in cases that are on review in the United States Supreme Court. That Mr. Bernard's conviction is still "pending on direct review" for the purposes of his opportunity to benefit from any intervening procedural change after he was convicted is not relevant to whether the state supreme court's *Bernard* decision has been stripped of its precedential significance in Minnesota.

Because the supreme court in *Losh* did not declare that a Minnesota Supreme Court decision loses its binding effect on this court and the district court, and Scott offers no other authority to support that idea, we will follow supreme court precedent. *See, e.g.*, *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). *Bernard* therefore continues to govern our determination.

Scott's constitutional challenge to the implied-consent law fails under *Bernard*. *Bernard* holds that a breath test is a constitutional search incident to a lawful arrest and that the state therefore does not violate a driver's substantive due process rights by criminally punishing him for refusing to submit to a breath test. 859 N.W.2d at 767. Scott's challenge based on the unconstitutional-conditions doctrine similarly fails, because punishing a person for refusing a constitutional search is not punishment for exercising a constitutional

8

right. *State v. Bennett*, 867 N.W.2d 539, 543 (Minn. App. 2015), *review denied* (Minn. Oct. 28, 2015). We affirm the district court's decision that the state did not violate Scott's constitutional rights by punishing him criminally for his refusing to take the breath test.

**III**

We last address Scott's argument that the district court committed reversible error by giving a no-adverse-inference instruction without his consent. Because he did not object to the jury instruction at trial, we review only for plain error. *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). We look to whether the instruction contained an error, the error was plain, and the error affected Scott's substantial rights. *See id.* Prejudice exists if there is a reasonable likelihood that giving the instruction significantly affected the verdict. *State v. Darris*, 648 N.W.2d 232, 240 (Minn. 2002). A defendant who fails to object to a no-adverse-inference instruction "bears a heavy burden of showing that substantial rights have been affected." *Id.*

Scott argues that giving a no-adverse-inference instruction without obtaining a defendant's express consent to the instruction on the record is always plain error, relying on *State v. Gomez*, 721 N.W.2d 871, 880 (Minn. 2006). The state argues that this case is more akin to *State v. Clifton*, in which the supreme court refused to grant a new trial after independently reviewing the record and finding that the defendant and his attorney agreed to the instruction. 701 N.W.2d 793, 798 (Minn. 2005). We need not decide the parties' dispute over whether *Gomez* or *Clifton* should control, because even if the district court plainly erred, the error did not prejudice Scott's substantial rights.

Scott implies that appellate courts have found a no-adverse-inference instruction harmless error only when strong forensic and testimonial evidence support the defendant's guilt, citing the facts of *Gomez* and *Darris*. We recognize that *Gomez* and *Darris*, which were first-degree murder cases, involved substantially more evidence than the state presented to prove Scott's test refusal. But neither opinion implies that the quantity of evidence produced in those cases was necessary to avoid reversal. The rule repeated and emphasized in both *Darris* and *Gomez* is that the defendant has the "heavy burden of showing that substantial rights have been affected." *Darris*, 648 N.W.2d at 240; *Gomez*, 721 N.W.2d at 880.

Scott has failed to carry this heavy burden. He provides no reason for us to suppose that the jury instruction influenced the verdict.

**Affirmed.**