*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0276**

State of Minnesota,
Respondent,

vs.

Henry James Johnson, Jr.,
Appellant.

**Filed December 18, 2023
Affirmed in part, reversed in part, and remanded
Frisch, Judge**

Hennepin County District Court
File No. 27-CR-20-19990

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michael J. Colich, Brooklyn Park City Attorney, Amanda J. Grossmann, Assistant City Attorney, Colich & Associates, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Johnson, Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

In this direct appeal from the judgment of conviction for second-degree driving while impaired (DWI), appellant argues that his conviction must be reversed because there

is insufficient evidence to establish that he refused a chemical breath test. Alternatively, appellant argues that if the evidence is sufficient to support the conviction, the case must be remanded to the district court for correction of his 365-day sentence to 364 days in accordance with newly enacted legislation. Because the evidence is sufficient to sustain the conviction, we affirm Johnson's conviction but remand for correction of his sentence.

## FACTS

On September 6, 2020, a deputy conducted a traffic stop of appellant Henry James Johnson Jr. The deputy responded to a call and noticed Johnson's vehicle because it was traveling at "quicker-than normal pace" and the vehicle headlights were not illuminated after dark. After following the vehicle for several blocks, the deputy stopped Johnson and approached the vehicle. When speaking with Johnson, the deputy observed that Johnson's eyes were bloodshot and watery, and the deputy detected an odor of alcohol coming from the vehicle. Upon inquiry, Johnson stated he had consumed one beer before driving. The deputy performed field sobriety tests which indicated possible impairment. The deputy asked Johnson to perform a preliminary breath test, but Johnson refused. After refusing, the deputy informed Johnson that his refusal was grounds for arrest. Johnson continued to refuse testing, and the deputy placed him under arrest. Johnson then agreed to take the preliminary breath test, which showed an alcohol concentration of over 0.12.

Officers transported Johnson to the police department. Upon arrival, officers read the Minnesota breath-test advisory. During the advisory, Johnson repeatedly stated that he wanted a blood test. Johnson stated that he wished to speak to an attorney. When Johnson stated that he did not have an attorney, officers offered him phonebooks. An officer then

2

asked Johnson again if he wished to speak with an attorney, and Johnson stated, "I want a blood test." The officer requested that Johnson submit to a chemical breath test. Johnson did not agree to a chemical breath test. He instead repeated that he wanted a blood test. The officer asked Johnson if he would submit to a breath test several times. Johnson stopped responding to officers and did not agree to take a breath test. The officer asked Johnson why he was refusing a breath test, and Johnson replied that breath tests are inaccurate.

Respondent State of Minnesota charged appellant with second-degree DWI, breath-test refusal pursuant to Minn. Stat. § 169A.20, subd. 2(1) (2020); third-degree DWI pursuant to Minn. Stat. § 169A.20, subd. 1(2) (2020); and failure to comply with a peace officer directing traffic pursuant to Minn. Stat. § 169.02, subd. 2 (2020). A jury found Johnson guilty of each count. The district court convicted Johnson of second-degree DWI, breath-test refusal, and sentenced Johnson to 365 days in jail stayed for three years. Johnson appeals.

**DECISION**

Johnson argues that the evidence at trial was insufficient to prove his guilt. Johnson also argues in the alternative that this case must be remanded to correct his 365-day sentence to 364 days. We address each argument in turn.

I. **The evidence was sufficient to establish that Johnson refused to submit to a breath test.**

Johnson argues the state did not introduce sufficient evidence to prove he refused to submit to a chemical breath test. He argues that no direct evidence shows that he refused

3

a breath test and that the circumstances proved support a rational hypothesis he did not refuse. Because the evidence is sufficient to establish that Johnson refused to submit to a breath test and is inconsistent with a rational hypothesis of innocence, we disagree.

To convict Johnson of second-degree DWI, breath-test refusal, the state was required to prove beyond a reasonable doubt that Johnson "refuse[d] to submit to . . . a chemical test of [his] breath." Minn. Stat. § 169A.20, subd. 2 (2020). On appeal, Johnson disputes the sufficiency of the state's evidence that he refused to submit to a chemical breath test.

The state may prove refusal of a chemical breath test through a direct refusal or "any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances." *State v. Ferrier*, 792 N.W.2d 98, 101-02 (Minn. App. 2010), *rev. denied* (Minn. Mar. 15, 2011). The state need only prove refusal of the test offered by law enforcement administering the test because law enforcement "has the authority to decide whether the test is of blood, breath, or urine." *See Schulz v. Comm'r of Pub. Safety*, 760 N.W.2d 331, 333 (Minn. App. 2009) (citing Minn. Stat. § 169A.51, subd. 3 (2006)), *rev. denied* (Minn. Apr. 21, 2009); *see also id.* at 335 ("[A] request for a test that is different from that which is offered by the peace officer, in and of itself, is not equivalent to a request for a test in addition to that which is offered by the peace officer.").

Johnson argues that there is no direct evidence that he expressly refused a breath test. The state argues that it introduced direct evidence that Johnson refused to submit to breath testing. The state contends that the breath-test-advisory form and law enforcement's

4

body-camera recording prove that, when asked if he would submit to a breath test, Johnson stated "no." Though the form denotes that Johnson refused a breath test, the form was completed by the officer based upon the officer's interpretation of Johnson's responses during the breath-test advisory and is not based on a direct statement of refusal by Johnson. The body-camera recording reflects that, when asked if he would take a breath test, Johnson never explicitly stated "no." Because Johnson's refusal to submit to a breath test requires an inferential step between Johnson's statements and a conclusion that he was refusing to submit to a breath test, we agree with Johnson that the breath-test-advisory form is not direct evidence of his refusal and is instead circumstantial evidence of refusal. *See Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) ("Circumstantial evidence is defined as evidence based on inference and not on personal knowledge or observation . . . ." (quotation omitted)).

Having concluded that the state relied on circumstantial evidence to prove that Johnson refused a breath test, we follow a two-step process in reviewing the sufficiency of the evidence to support the conviction. *State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011). In the first step, we must identify the circumstances proved. *Id.* "In identifying the circumstances proved, we defer, consistent with [the] standard of review, to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). In other words, we must "construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the

5

State's witnesses and disbelieved the defense witnesses." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008).

In the second step, we "determine whether the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." *Hawes*, 801 N.W.2d at 669 (quotation omitted). While we give deference to the fact-finder when reviewing the circumstances proved, we give "no deference to the fact finder[']s choice between reasonable inferences." *Id.* at 668-69 (quotation omitted). When evaluating whether the circumstances proved are consistent with a rational hypothesis of guilt and inconsistent with a rational hypothesis of innocence, we "do not review each circumstance proved in isolation." *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010). "Instead, we must consider whether the circumstances presented are consistent with guilt and inconsistent, *on the whole*, with any reasonable hypothesis of innocence." *Id*. (quotation omitted).

The state proved the following circumstances regarding Johnson's refusal: (1) when asked if he would take a breath test, Johnson responded "I wanna take a blood test"; (2) the officer clearly and repeatedly told Johnson that the only test offered was a breath test; (3) the officer asked Johnson, "will you take a breath test" three more times and received no direct response to that question; (4) when the officer asked Johnson his reason for refusing, Johnson did not state he was not refusing but instead replied "those breath tests are inaccurate . . . I wanna take a blood test"; and (5) another officer present during the breath-test advisory understood Johnson's statements to mean he refused the breath test. The circumstances proved reasonably support the inference that Johnson refused to submit

6

to a breath test. *See Ferrier*, 792 N.W.2d at 102 (a refusal to submit to a test includes "any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances").

Johnson argues that his statements during the breath-test advisory support a rational hypothesis other than that of guilt, namely that Johnson "wanted a blood test prior to submitting to breath testing" and if blood testing had been provided, he "may have eventually provided a breath sample." This hypothesis is not rational because it is not consistent with the circumstances proved. *See Al-Naseer*, 788 N.W.2d at 473 ("We will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture." (quotation omitted)); *State v. Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995) (noting that a successful challenge to the sufficiency of the evidence must be based on evidence in the record). Even so, Johnson's assertion that the evidence supports an inference that he may have provided a breath sample subsequent to blood testing does not necessarily negate the jury's conclusion that he refused the test that was offered to him. A police officer has statutory authority to determine what chemical test to administer. *Schulz*, 760 N.W.2d at 333. Though Johnson had a statutory right to request testing in addition to the test administered by a police officer, he does not have a statutory or other right to condition his consent to a breath test on receiving a blood test. *See* Minn. Stat. § 169A.51, subd. 7(b) (2020). Accordingly, the circumstances proved are only consistent with Johnson's guilt, and the evidence was therefore sufficient to establish that Johnson refused to submit to a breath test.

**II.    Johnson's gross-misdemeanor sentence must be reduced to 364 days.**

Johnson argues that his 365-day gross-misdemeanor sentence is no longer authorized by law and must be reduced to 364 days consistent with a 2023 session law setting forth the maximum punishment for gross misdemeanors. 2023 Minn. Laws ch. 52, art. 6, § 6, at 736-37.[1] Because the 2023 session law is retroactive, we agree that the sentence must be corrected to 364 days. *Id.* ("This section is effective the day following final enactment and applies . . . retroactively to offenders who received a gross misdemeanor sentence before that date."). We therefore reverse the 365-day sentence and remand to the district court for the sole purpose of correction of the sentence. *Id.* ("A court may at any time correct or reduce [a sentence of imprisonment for one year or 365 days] . . . and shall issue a corrected sentencing order upon motion of any eligible defendant.").

**Affirmed in part, reversed in part, and remanded.**

---

[1] Previously, the maximum sentence of imprisonment for gross misdemeanors was one year. Minn. Stat. § 609.0341 (2022). However, in 2023 the legislature enacted Minnesota Statutes section 609.0342 which provides that "[a]ny law of this state that provides for a maximum sentence of imprisonment of one year or is defined as a gross misdemeanor shall be deemed to provide for a . . . maximum sentence of imprisonment of 364 days." 2023 Minn. Laws ch. 52, art. 6, § 6 at 736-37 (to be codified at Minn. Stat. § 609.0342).