*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-2043**

State of Minnesota,
Respondent,

vs.

Kent Randall Meyer,
Appellant.

**Filed December 29, 2025**
**Affirmed**
**Reyes, Judge**

Anoka County District Court
File No. 02-CR-24-2593

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Carl E. Erickson, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Wheelock, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Appellant argues that the state presented insufficient evidence to sustain his conviction of refusal to submit to a chemical test of blood or urine as required by a search warrant. We affirm.

**FACTS**

The following facts are taken from the trial evidence and viewed in the light most favorable to the jury verdict. *See State v. Marth*, 25 N.W.3d 911, 923 (Minn. App. 2025) ("Appellate courts evaluating the sufficiency of the evidence . . . view the evidence in the light most favorable to the verdict." (quotation omitted)), *rev. denied* (Minn. Oct. 29, 2025).

In the early hours of April 19, 2024, a police officer saw a vehicle traveling down the highway and discovered it was registered to an individual whose license was canceled as inimical to public safety. The officer pulled the car over and saw appellant Kent Randall Meyer in the driver's seat. After appellant demonstrated six signs of impairment during the horizontal gaze nystagmus test, the officer brought appellant to the police station. There, the officer obtained a search warrant for a blood or urine sample from appellant. The officer transported appellant to the hospital, where he requested appellant submit to a blood test and repeatedly reminded appellant that refusal to submit to testing was a crime. The officer also offered appellant the alternative option of submitting to a urine test. Appellant refused the urine test.

An emergency-department technician at the hospital attempted to draw appellant's blood from his left arm. He successfully pierced appellant's skin but failed to obtain a blood sample. The technician testified that he intended to try to draw blood from appellant's other arm. But before he could try, appellant stated: "Okay, that's one man. That's it. That's it. I done, I did my part." The technician made no further attempts to draw blood. After the failed blood draw, the officer offered appellant the opportunity to provide a urine sample instead of a blood sample, but appellant again refused the urine test.

Respondent State of Minnesota charged appellant with one count each of: refusal to submit to a chemical test in violation of Minn. Stat. § 169A.20, subd. 2(2) (2022);[1] driving while impaired in violation of Minn. Stat. § 169A.20, subd. 1(1) (2022); driving after cancellation of a driver's license or driving privileges in violation of Minn. Stat. § 171.24, subd. 5 (2022); and driving in violation of license restrictions in violation of Minn. Stat. § 171.09, subd. 1(f)(1) (2022). Appellant pleaded guilty to the latter two charges and went to trial on the former two charges.

At appellant's jury trial, the state presented the officer's body-camera footage as well as testimony from the officer and the technician. The jury found appellant guilty of test refusal and not guilty of driving while impaired. The district court sentenced appellant to concurrent sentences of 75 months in prison for the test-refusal conviction and 364 days each for the two convictions to which he pleaded guilty before trial. This appeal follows.

---

[1] The original complaint listed this charge as refusal to submit to a breath test in violation of Minn. Stat. § 169A.20, subd. 2(1) (2022). The state amended the criminal complaint twice to clarify that the charge concerned refusal to submit to a chemical test and that appellant had been convicted previously of a felony under the same statute.

## DECISION

Appellant argues that the state presented insufficient evidence at trial to support his conviction of refusing to submit to a blood or urine test as required by a search warrant. We are not persuaded.

"In reviewing the sufficiency of evidence for a conviction, we painstakingly review the record to determine whether that evidence, viewed in the light most favorable to the verdict, was sufficient to permit the jurors to reach the verdict that they did." *State v. Hassan*, 977 N.W.2d 633, 639-40 (Minn. 2022). We "assume that the jury disbelieved any evidence that conflicts with the verdict." *State v. Bahtuoh*, 840 N.W.2d 804, 809 (Minn. 2013). "The verdict will be upheld if the fact finder, giving due regard to the presumption of innocence and to the state's burden of proof beyond a reasonable doubt, could reasonably have found the defendant guilty of the offense charged." *State v. Thomas*, 590 N.W.2d 755, 757-58 (Minn. 1999).

To find a defendant guilty of test refusal, a jury must find that the state has proved beyond a reasonable doubt that the defendant refused to submit to a chemical test as required by a search warrant. Minn. Stat. § 169A.20, subd. 2(2). "[R]efusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the [defendant's] words and actions in light of the totality of the circumstances." *State v. Ferrier*, 792 N.W.2d 98, 102 (Minn. App. 2010), *rev. denied* (Minn. Mar. 15, 2011). This court has rejected a reading of the test-refusal statute that would "permit[] a driver to verbally agree to testing and then frustrate the testing process." *Id.*; *cf. Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 721-22 (Minn. App. 2014)

4

(stating, in context of license revocation, "[i]f a driver expresses verbal agreement to submit to chemical testing but does not provide an adequate sample, [their] conduct may be deemed a refusal to submit to chemical testing").

Appellant appears to frame his argument under the standard of review this court applies when the state relied on direct evidence at trial. "[D]irect evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted); *see, e.g.*, *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (stating that, for murder conviction, defendant's statement, "'I want him dead,' was direct evidence of her mens rea"). Witness testimony "is direct evidence when it reflects a witness's personal observations and allows the jury to find the defendant guilty without having to draw any inferences." *Horst*, 880 N.W.2d at 40. A video may also be direct evidence of what it shows. *State v. Blevins*, 10 N.W.3d 29, 39-40 (Minn. 2024).

Direct evidence supports appellant's refusal to submit to a blood test in violation of Minnesota Statutes section 169A.20, subdivision 2(2). When the technician removed the needle from appellant's arm, thereby concluding the first attempt to draw blood, appellant stated, "Okay, that's one man. That's it. That's it. I done, I did my part." Both the officer and the technician testified that they interpreted his words as refusal to submit to a blood draw. For that reason, the technician did not follow the typical practice, and his intention, to attempt to draw blood from appellant's other arm. No inference is required to find that appellant indicated "actual unwillingness to participate in the testing process." *Ferrier*, 792 N.W.2d at 102.

Appellant argues that he submitted to the blood test but that the needle simply did not draw blood. But test refusal focuses on the volitional acts and words of the *defendant*, not the efficacy of the testing process. And, as noted above, appellant's volitional acts and words indicated his unwillingness to participate in any further attempts to draw blood and "frustrate[d] the testing process." *Id.* at 101. The video shows appellant grunting and curled into a half-fetal position. In addition, the technician told him to "lighten up for me, just so you're not moving around too much" and repeatedly asked him to hold still. And appellant's statement following the end of the attempted blood draw are direct evidence that appellant would not submit to further testing. *See Horst*, 880 N.W.2d at 40. We conclude that the state presented sufficient direct evidence to support appellant's conviction.

**Affirmed.**